UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT LEWIS, JR. | CIVIL ACTION |
| VERSUS | NO. 13-5994 |
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO, ET AL. | SECTION "L" |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment to determine the substantive law applicable to this case. (Rec. Doc. 84). The Court has reviewed the parties' memoranda, supporting documentation, and the applicable law, and now issues this Order and Reasons.

### I. BACKGROUND

This action arises out of an injury that occurred offshore. Plaintiff filed suit on October 1, 2013 under the Outer Continental Shelf Lands Act ("OCSLA") and the Longshore and Habor Workers' Compensation Act. (*See* Rec. Docs. 1, 25, 49). Plaintiff alleges that he was an employee of Bay LTD, a subsidiary of Berry G.P., working on the Ram-Powell tension-leg fixed platform, located on the OCS in the Gulf of Mexico, in Viosca Knoll Block 956.

According to Plaintiff, on October 25, 2012, he was working on a welding job on the Ram-Powell. Plaintiff alleges that during a Bay Safety meeting that day, Plaintiff informed the Bay project leader and the Shell Safety Representative that there was a hazardous pile of materials impeding Plaintiff's work duties. Plaintiff also alleges that the Sparrows and Nabors employees were informed of the pile of materials. According to Plaintiff, Defendants failed to remedy the hazardous condition and had failed to properly clean the platform. Plaintiff also asserts that Mark Cundiff worked on the Ram-Powell for SMS as the acting Health Safety & Environmental Technician and failed to create a safe work environment.

According to Plaintiff, at the request of a Bay employee he carried a fifty-pound plate up a set of stairs to the welding project. As he attempted to step around a co-worker on the stairs, he slipped on the oily deck and then tripped on the pile of materials. He alleges that he landed on his left elbow while holding the plate, which caused "severe and debilitating injuries." Plaintiff alleges that he suffered a herniated disk along with damage to other discs, which resulted in epidural steroid injections to Plaintiff's cervical spine and lumbar spine, an ulnar transposition surgery and an L5S1 discetomy recommendation.

The Court continued two pending motions for summary judgment so that it could first determine the substantive law applicable to this case.

## II.     PRESENT MOTION

The parties agree that the substantive law for injuries occurring on fixed offshore oil platforms located on the OCS is the law of the adjacent state. However, they disagree as to which state qualifies as the "adjacent state," giving rise to the present motion. Defendants Helmerich & Payne International Drilling Company ("Helmerich") and Shell Exploration and Production Company ("Shell") now move for partial summary judgment on the issue of which state is "adjacent" to the Ram-Powell under the OCSLA. (Rec. Doc. 84). Defendants argue that Alabama is the adjacent state, thus its law governs this private dispute. Defendants apply the four factor test of *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 523 (5th Cir. 2000). First, Defendants argue that the Ram-Powell is further east, thus further into Alabama territory than the platform in *Samedan*. Second, Defendants argue that federal and Alabama state authorities consider the Viosca Knoll Block 956 to be adjacent to Alabama. Third, Defendants argue that case law in the Fifth Circuit supports a finding that the Viosca Knoll Block 956 is adjacent to Alabama. Fourth, Defendants argue that its evidence indicates that an extension of the

Mississippi/Alabama boundary lines supports that Viosca Knoll Block 956 falls on the Alabama side.

Plaintiff responds in opposition, arguing that Louisiana is the adjacent state, thus its state law applies. (Rec. Doc. 85). First, Plaintiff argues that the Ram-Powell is geographically closer to Louisiana than Alabama. Notably, Plaintiff argues, he traveled to and from Louisiana in transit to the Ram-Powell and had no connections to Alabama. Second, Plaintiff argues that only federal, and not state, agency opinions should be considered, and that agency opinions are less important than geographic proximity. Third, Plaintiff argues that there are no controlling decisions on the Viosca Knoll Block 956, thus geographic proximity is the most determinative factor. Finally, Plaintiff argues that any evidence regarding the projected boundary is not as determinative as geographic proximity.

### III. DISCUSSION

To properly frame the legal issue currently before the Court, the Court feels it is useful to examine the OCSLA legislative text, history, and related jurisprudence. Congress passed the OCLSA in 1953. In pertinent part, the Outer Continental Shelf Lands Act provides:

> To the extent that they are applicable and not inconsistent with [federal law and federal regulations], the civil and criminal laws of each adjacent State . . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area.

43 U.S.C. § 1333(a)(2)(A). Sixteen years after the law's passage, in *Rodrigue v. Aetna Casualty and Surety Company*, the Supreme Court first considered the extent to which the OCSLA adopts state law for fixed structures on the OCS. 395 U.S. 352 (1969). In *Rodrigue*, the Supreme Court analyzed in detail the legislative history of, and congressional intent behind, the OCSLA.

3

*Rodrigue* involved two wrongful death suits stemming from federal district courts in Louisiana. *Id.* at 353. The accident in each case took place on a fixed platform in the Gulf of Mexico. Both plaintiffs filed causes of action under (1) the Death of the High Seas Act; and (2) Louisiana law under the OCSLA.

The Supreme Court held that these tort claims were governed by the OCSLA and state law, not maritime law, which was inapplicable. In reaching this conclusion, the Court explained that Congress designed the OCSLA to provide a body of law applicable to the seabed, the subsoil and fixed platforms on the OCS. *Id.* Although Congress generally affixed federal law to the OCS, as the Court explained

> Since federal law, because of its limited function in a federal system, might be inadequate to cope with the full range of potential legal problems, the Act supplemented gaps in the federal law with state law through the 'adoption of State law as the law of the United States.' Under § 4, the adjacent State's laws were made 'the law of the United States for (the relevant subsoil and seabed) and artificial islands and fixed structures erected thereon,' but only to 'the extent that they are applicable and not inconsistent with other Federal laws.'

*Id.* at 356. The Court in *Rodrigue* emphasized that "state law is adopted only as surrogate federal law" and is helpful in providing a complete framework of law to govern the extensive industry and employees on fixed platforms attached to the OCS. *Id.* As the Court noted, the legislative history indicated that Congress considered these fixed platforms to be artificial islands, not vessels. *Id.* at 353-60. Thus, Congress deemed state law more appropriate than maritime law and accordingly it chose state law as the surrogate law. *Id.* The Seas Act claims were therefore inapplicable to plaintiffs' claims in *Rodrigue*. *Id.*

Following *Rodrigue*, a threshold question in an OCS is the determination of which state is the "adjacent state" whose laws "supplement[] gaps" in federal law to provide the substantive law of the case. *Id.* at 356. In two Fifth Circuit cases, the Court of Appeals explained a four-factor test to determine which is the "adjacent state" to a portion of the OCS when the President

has not used his authority to publish projected lines under 43 U.S.C. § 1333(a)(2)(A). *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 525 (5th Cir. 2000); *Reeves v. B&S Welding Inc.*, 897 F.2d 178 (5th Cir. 1990). In *Samedan*, the Fifth Circuit explicitly set forth four factors for a court to make the adjacency determination: (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be "off of"; (3) prior court determinations; and (4) projected boundaries. 208 F.3d at 524. In that case, the Fifth Circuit held that these factors established that Block 261 was adjacent to Alabama. *Id.* at 528. The Fifth Circuit emphasized that even though Block 261 was geographically closer to Louisiana, several federal and state agencies considered it to be "off of" the coast of Alabama, and it fell on the Alabama side of the projected Mississippi-Alabama boundary. *Id.* The Fifth Circuit in *Samedon* also considered relevant state agency views, even if they were less probative than the views of a federal agency. *Id.*

The Fifth Circuit's reasoning in *Samedon* is instructive here. It is undisputed that the President has not published projected lines under 43 U.S.C. § 1333(a)(2)(A), thus the Court turns to the four-factor *Samedon* test. Just as in *Samedon*, several federal and state agencies consider the pertinent Block to be off of the coast of Alabama, not Louisiana, as Defendants' registered professional surveyor Michael Mayeux explains in his affidavit. Furthermore, the U.S. Department of Interior Minerals Management Service ("MMS") Publication 86-09 also reflects that, the Viosca Knoll Block 956 falls within the OCS area deemed to affect Alabama, to the exclusion of the surrounding Gulf States. Likewise, an official at the Alabama Department of Conservation and Natural Resources also considers Block 956 to be adjacent to Alabama. The record is devoid of evidence of any contrasting view of a Louisiana official. Although Plaintiff argues that any state agencies should be ignored in this determination, as the Fifth Circuit explained in *Samedon*, there is "no reason to deem irrelevant the opinions of affected state

5

agencies-they may be less probative than are opinions of federal agencies, but they are not irrelevant." 208 F.3d at 528. The federal MMS determination here, further supported by the Alabama Department of Conservation and Natural Resources, points towards Alabama as the adjacent state.

Additionally, the other three factors, viewed together, indicate Alabama as the adjacent state, for the purposes of determining the substantive law applicable to this platform. Projected boundaries, as demonstrated by evidence from the MMS, U.S. Commerce Department, and U.S. Bureau of Ocean Energy Management ("BOEM"), all indicate that the Viosca Knoll Block 956 is in the portion of the OCS which affects Alabama, not Louisiana. Indeed, evidence from the MMS indicates that the Block 956 is in a portion of the OCS exclusive to Alabama. This factor strongly supports that Alabama is the adjacent state. Likewise, prior court determinations support Alabama as the state adjacent to the Viosca Knoll Block 956. Although *Samedon* does not specifically analyze Block 956, its reasoning applies with equal force, as the agencies, registered professional surveyor's opinion, and other evidence are substantially similar, while the pertinent Blocks are geographically close to each other. Moreover, Defendants point out that Block 956 is ever so slightly east of the Block discussed in *Samedon*, an important fact when considering the projected lines of, for example, BOEM. Moreover, the court of the Western District of Louisiana has ruled that the Ram-Powell – the same fixed platform at issue here – was adjacent to Alabama under the OCSLA.[1] *Armand v. Shell Oil Company*, 01-1646 (W.D. La. Aug. 7, 2002).

The Court acknowledges Plaintiff's argument that the Block 956 is geographically closer to Louisiana because of the state's peculiar boot shape.[2] Even accepting this argument as true,

---

[1] Notably, in *Armand*, the non-movant did not oppose the movant's position that Alabama law applied to the Ram-Powell because the non-movant stated: "I have been unable to find any authority to [oppose] and consequently I must acquiesce in the granting of [the] motion." (*Armand*, 01-1646, Rec. Doc. 29).

[2] The Court also acknowledges Plaintiff's argument that Louisiana was the state of transit to and from the Ram-Powell. However, the geographic proximity factor does not place import on the state of transit of the plaintiff

6

that factor alone is not enough to overcome the other factors weighing strongly in favor of Alabama as the adjacent state, just as the Fifth Circuit in *Samedon* noted that the geographic proximity factor was not determinative when the second, third, and fourth factors all indicated otherwise. 208 F.3d at 528.

## IV.   CONCLUSION

Under the multi-factor test, the Court holds that Alabama is the adjacent state to the Ram-Powell in Viosca Knoll Block 956, and Alabama law therefore governs this private dispute under the OCSLA.

Accordingly, **IT IS ORDERED** that the motion for partial summary judgment, (Rec. Doc. 84), is **GRANTED**.

New Orleans, Louisiana, this 10th day of March, 2015.

_____
UNITED STATES DISTRICT JUDGE

---

involved in the dispute. Regardless, the other evidence here all points towards Alabama as the adjacent state, thus would still outweigh the geographic proximity factor, even if the Court were to accept Plaintiff's transit argument.