## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT LEWIS, JR. | CIVIL ACTION |
| VERSUS | NO. 13-5994 |
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO, ET AL. | SECTION "L" |

### ORDER AND REASONS

Before the Court are motions for summary judgment from various Defendants, (Rec. Docs. 73, 77, 103, 104). The Court has reviewed the parties' memoranda, supporting documentation, and the applicable law, and now issues this Order and Reasons.

**I.     BACKGROUND**

This action arises out of an injury that occurred offshore. Robert Lewis filed suit on October 1, 2013 under the Outer Continental Shelf Lands Act ("OCSLA") and the Longshore and Habor Workers' Compensation Act. (*See* Rec. Docs. 1, 25, 49). Mr. Lewis alleges that he was an employee of Bay LTD, a subsidiary of Berry G.P., working on the Ram-Powell tension-leg fixed platform, located on the OCS in the Gulf of Mexico, in Viosca Knoll Block 956.

According to Mr. Lewis, on October 25, 2012, he was working on a welding job on the Ram-Powell. Mr. Lewis alleges that prior to, and during, a Bay Safety meeting that day, he informed the Bay project leader and the Shell Safety Representative that there was a hazardous pile of materials impeding his work duties. Mr. Lewis also alleges that the employees of Sparrows and Nabors, crane operators, were informed of the pile of materials. According to Mr. Lewis, Defendants failed to remedy the hazardous condition and failed to properly clean the platform. Mr. Lewis also asserts that Mark Cundiff, who worked on the Ram-Powell for Safety Management Systems ("SMS") as the acting Health Safety & Environmental Technician, failed to create a safe work environment.

According to Mr. Lewis, at the request of a Bay employee he carried a fifty-pound plate up a set of stairs to the welding project. As he attempted to step around a co-worker on the stairs, he slipped on the oily deck and while attempting to regain his balance he tripped on the pile of materials. He alleges that he landed on his left elbow while holding the plate, which caused "severe and debilitating injuries." Mr. Lewis alleges that he suffered a herniated disk along with damage to other discs, which resulted in epidural steroid injections to his cervical spine and lumbar spine, an ulnar transposition surgery and an L5S1 discetomy recommendation.

Recently, the Court ruled that the law of Alabama, the state adjacent to where the Ram-Powell sits on the OCS, supplements the gaps in federal law to provide the substantive law for this private OCSLA dispute. (Rec. Doc. 88).

## II.    PRESENT MOTION

### A.    Nabors' motion for summary judgment

In its motion for summary judgment, Nabors argues that, as a matter of law, it owed no duty to Mr. Lewis. (Rec. Docs. 77, 109).[1] In the alternative, Nabors argues that even if it had a duty, it did not breach the duty. Specifically, Nabors asserts that it had no operational control over Mr. Lewis's work and that it had no independent authority to operate the cranes. Nabors argues that it was not aware of Mr. Lewis's alleged request to move the equipment. Nabors also argues that it could not have foreseen that Mr. Lewis might attempt to carry two heavy welding plates through a narrow area where he knew a tripping hazard was present. Moreover, Nabors argues that the doctrine of assumption of the risk bars Mr. Lewis's claim because he knew of, and appreciated, the risk and voluntarily exposed himself to that risk.

---

[1] The Court deferred Nabors' motion for summary judgment until discovery was complete. The Court will now consider Nabors' motion, as supplemented by Nabors' new brief, (Rec. Doc. 109). Although styled as a "reply brief," the Court will construe it as a supplemental brief, particularly considering that Mr. Lewis now has had an opportunity to respond to Nabors' new arguments.

Mr. Lewis opposes.[2] (Rec. Doc. 125). First and foremost, Mr. Lewis argues that Nabors owed him a duty. Mr. Lewis asserts that it is reasonable to conclude that the Nabors crane operator on the Ram-Powell placed the obstructing materials in Mr. Lewis's work area. Mr. Lewis argues that Nabors effectively created the hazard which contributed to his injury. Further, citing the testimony of the crane operator, in which the operator acknowledges that if he had seen the materials in Mr. Lewis's area, he would have moved them, Mr. Lewis argues that even if a Nabors' employee did not create the hazard, the employee could have moved the materials.

Nabors replies, by leave of Court. (Rec. Doc. 135).

**B.      Sparrows' motion for summary judgment**

In its motion for summary judgment, Sparrows argues that it has no liability for the accident because it had no crane operators on the platform. (Rec. Doc. 73). Rather, Sparrows indicates that its employee, Alex Regal, only trained / assessed crane operators and that he did not otherwise tell crane operators what to do. Sparrows indicates that no facts support that Mr. Regal operated any crane at the time of the incident, but rather notes that he only trained/assessed crane operators, such as Nabors'. Sparrows acknowledges that at times Mr. Regal might "give them a hand with rigging."

Mr. Lewis opposes. (Rec. Doc. 119). According to Mr. Lewis, Mr. Regal operated a crane. Mr. Lewis asserts that the factual issue of whether Mr. Regal operated the crane is a genuine issue of material fact, rendering summary judgment inappropriate. Mr. Lewis states that credibility assessments are not proper summary judgment determinations.

---

[2] Initially, Mr. Lewis argued that Nabors' motion was premature. (Rec. Doc. 81). Now that the motion is timely, the Court will address Mr. Lewis's substantive arguments in the brief that he styled as a "sur-reply." (Rec. Doc. 125).

### C.        Shell's motion for summary judgment

Shell argues that Mr. Lewis's claims are barred under the assumption of the risk doctrine.

(Rec. Doc. 103). Shell states that assumption of the risk is a form of contributory negligence

under Alabama law. Shell argues that Mr. Lewis knew of, and appreciated, the risks and hazards

in his work area, specifically the pile of materials that he tripped on, and voluntarily exposed

himself to that risk. Therefore, Shell argues, Mr. Lewis's claims are barred.

Sparrows and Mark Cundiff adopt Shell's assumption of the risk arguments. (Rec. Doc.

105, 111).

Mr. Lewis opposes. (Rec. Doc. 117). First, citing the Fifth Circuit case, *Nat'l Marine*

*Serv. Inc. v. Petroleum Serv. Corp.*, 736 F.2d 272, 277 (5th Cir. 1984), he argues that the

doctrine of assumption of the risk is inapplicable because this is a maritime personal injury case.

Second, Mr. Lewis argues that regardless, there are genuine issues of material fact as to (a)

whether he had the requisite knowledge and appreciate of the risk and (b) whether he voluntarily

exposed himself to that risk.

Shell replies, by leave of Court, (Rec. Doc. 133), as does Mark Cundiff and SMS (132).

These parties argue that Alabama law, not general maritime law, is the substantive law that

governs this case under the OCSLA and that assumption of the risk doctrine bars Mr. Lewis's

claim. The parties emphasize that Mr. Lewis voluntarily exposed himself to the risk because he

continued to work in the area despite the stop work order. The parties further argue that the cases

cited by Mr. Lewis are distinguishable.

### D.        H&P's motion for summary judgment

H&P similarly argues that assumption of the risk doctrine bars Plaintiffs' claims. (Rec.

Doc. 104). H&P argues that Mr. Lewis knew of, and appreciated, the risks and hazards in his

work area, specifically the pile of materials that he tripped on, and voluntarily exposed himself to

that risk. Additionally, H&P argues that it owed no duty to Mr. Lewis because H&P was not aware of the hazardous pile of material and was not aware of any request to move the materials.

Mr. Lewis opposes. (Rec. Doc. 120). He re-asserts his same arguments that the doctrine of assumption of the risk is inapplicable here and that regardless there are genuine issues of material fact as to (a) whether he had the requisite knowledge and appreciate of the risk and (b) whether he voluntarily exposed himself to that risk.

H&P replies, by leave of Court. (Rec. Dc. 134). H&P argues that Mr. Lewis failed to show that H&P owed him a duty of care and that Mr. Lewis's evidence is speculative. H&P asserts that the rig that was to be placed on the platform was not that of H&P, but rather was that of Nabors. H&P further adopts the assumption of the risk arguments of Mark Cundiff and SMS.

## III.   DISCUSSION

### A.   Duty and Breach of Duty

#### 1.   Nabors and Sparrows

The Court first considers Nabors' and Sparrows' argument that they are entitled to summary judgment because they owed no duty to Mr. Lewis. Under Alabama law,

> In general, "every person owes every other person a duty imposed by law to be careful not to hurt him." In determining whether a duty exists in a given situation, however, courts should consider a number of factors, including public policy, social considerations, and foreseeability. The key factor is whether the injury was foreseeable by the defendant. The essential question is "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct."

*Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993) (internal citations omitted). In this case, there are a number of significant disputed factual issues pertinent to whether Nabors and Sparrows owed Mr. Lewis a duty. First, generally, it is not clear to whom Nabors' and Sparrows' employees reported on the Ram-Powell, from whom they took orders, and what their job responsibilities entailed. It is not clear whether the Ram-Powell permitted welders such as Mr.

5

Lewis to order crane operators to move around equipment. For example, Mr. Lewis contends that he asked Mr. Regal to move the materials and that Mr. Regal said he would do so after a boat was offloaded. According to Sparrows, however, Mr. Regal was only tasked training and assessing crane operators, and he never operated a crane himself on the Ram-Powell. Mr. Lewis rebuts this assertion, stating that he saw Mr. Regal get into the crane cab and seemingly operate a crane on the Ram-Powell. The evidence cited by the parties patently conflicts regarding whether Mr. Regal ever operated a crane on the Ram-Powell. Moreover, the parties dispute to what extent, and with what frequency, Nabors was charged with moving around equipment on the Ram-Powell. Nabors itself acknowledges that it cannot be certain as to whether its employee moved the materials that Mr. Lewis tripped on. It is not clear who placed the materials on the ground where Mr. Lewis tripped.

These significant disputed facts demonstrate that the issue of whether the injury here was foreseeable by each defendant – the "key factor" in the duty analysis – is pregnant with contested facts. This inquiry is fact-specific regardless of Nabors' argument that it is akin to an independent contractor without a specific duty outside the scope of its general duty. Because there are genuine issues of material facts regarding whether Nabors and Sparrows owed a duty to Mr. Lewis, and whether they breached such a duty, summary judgment on these grounds is inappropriate.

### 2.   H&P

Likewise, summary judgment is inappropriate as to H&P's argument that it owed no duty of care to Mr. Lewis. Mr. Lewis cites evidence that H&P owned the Ram-Powell and that a H&P deck foreman, Lee Barton, was on the platform at the time of the incident.[3] He argues that H&P's interest in properly welded plates creates a duty with regards to the work space where he

---

[3] H&P apparently disputes that it owned the rig. (*See* Rec. Doc. 134 at 2). This fact is material.

was injured and that his injury was foreseeable to H&P. Mr. Lewis cites other evidence that Mr. Barton had authority and control over the area where Mr. Lewis was injured. In light of these allegations, summary judgment in H&P's favor is inappropriate on the issue of duty.

**B.      Assumption of the risk**

The Court next analyzes whether, as a matter of law, the doctrine of assumption of the risk bars Mr. Lewis's claims. As a preliminary matter, the Court notes that it has already ruled that the law of Alabama, the adjacent state, provides the substantive law governing this private OCSLA dispute. (Rec. Doc. 88). Although Mr. Lewis argues that the assumption of the risk doctrine is inapplicable in this maritime case, this argument is moot after the Court's ruling that Alabama law governs pursuant to the OCSLA. As the Court fully explained in that opinion, the Supreme Court's holding in *Rodrigue v. Aetna Casualty and Surety Company*, 395 U.S. 352, 356 (1969), disposes of this argument of Mr. Lewis. *See also Alleman v. Omni Energy Services Corp.*, 580 F.3d 280, 285-86 (5th Cir. 2009). Alabama law, including the assumption of the risk doctrine, applies in this OCSLA dispute.[4] This is true even where the Longshore Act provides the applicable worker's compensation remedy. 33 U.S.C. § 933; 43 U.S.C. § 1333(b); s*ee Pacific Operators Offshore, LLP v. Valladolid*, 132 S.Ct. 680, 687 (2012); *Rodrigue*, 395 U.S. at 356 (explaining that the OCSLA "deliberately eschews the application of admiralty principles" to permanent structures); *see also Moore v. Big Salamis, Inc.*, 748 F.Supp.2d 598 (E.D. Tex. 2010) (holding that a tension-leg structure is permanently attached to the OCS and that the OCSLA applies); *Jordan v. Shell Oil Co.*, 2007 WL 2220986 (S.D. Tex. Aug. 2, 2007) (same).

Turning to the merits, the Court must assess whether there is a genuine issue of material fact as to assumption of the risk. Under Alabama law, where a defendant demonstrates the

---

[4] The case cited by Mr. Lewis, *Nat'l Marine Serv. Inc. v. Petroleum Serv. Corp.*, 736 F.2d 272, 277 (5th Cir. 1984), does not involve the OCSLA but rather involves the application of general maritime law.

affirmative defense of assumption of risk, the plaintiff is barred from recovery for an injury arising from the risk he assumed. *See Ex parte Barran*, 730 So. 2d 203, 206 (Ala. 1998). "Assumption of the risk has two subjective elements: (1) the plaintiff's knowledge and appreciation of the risk; and (2) the plaintiff's voluntary exposure to that risk." *Id.* (internal citations omitted).

In this case, there is a genuine dispute of material fact as to assumption of the risk. Significantly, the parties dispute whether oil played a role in causing Mr. Lewis's fall. According to Mr. Lewis's deposition testimony, it did. According to the accident report cited by the Defendants, it did not. Rather, the Defendants maintain that only the materials left on the ground caused the fall. While Mr. Lewis admits his knowledge and appreciation of the materials on the ground, he argues that he had no knowledge and appreciation of the alleged oil. Moreover, he argues, he did not voluntary expose himself to this unknown risk. As this disputed fact is material to the applicability of assumption of the risk here, summary judgment is inappropriate on the issue.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that the motions for summary judgment are **DENIED**.

New Orleans, Louisiana, this 6th day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE

8